I wonder if those who are going to argue would step up and identify yourselves for the record. You're Mr. Carroll? Yes. Brian Carroll from the State Appellate Defender's Office, representing Mr. Rodriguez. Good morning, Mr. Carroll. And you're Ms. Coletti, right? Good morning, yes. Good morning to you both. Have you both appeared here before? Yes. Okay, fine. Well, then you know the drill, and I think you can safely assume that we're familiar with your briefs. Thank you. Excuse me, Court Counsel. Oh, I will be addressing the first two issues of the brief. Okay. Any other issues? Juan Rodriguez was denied a fair trial when the trial court allowed the State to impeach him with his prior juvenile adjudication in violation of the Rules of Evidence. The Rules of Evidence state that the defendant's juvenile adjudication cannot be used as impeachment except where the defendant opens the door to such evidence in his own testimony. In this case, Mr. Rodriguez did not open the door. There's no allegation that he opened the door. Thus, as a matter of law, the juvenile adjudication was inadmissible. So your argument basically is that people v. Harris really didn't change anything and that the amendment to the statute didn't change anything from the Montgomery test? That's correct, Your Honor. Well, why did they change the statute then? What was the purpose of adding that language? Well, Your Honor, the 1999 amendment merely brought the Juvenile Court Act into accord with current evidentiary rules. Why was that necessary if they weren't going to change the law? Well, if you look at the history of the Act, prior to 1982, the language of the Act stated that adjudications could not come in for any reason whatsoever. That was in conflict with Montgomery, which said that witnesses – that adjudications of witnesses other than defendant could come in for impeachment. So there was a conflict. Okay. In 1982, the Act was amended to state that adjudications of witnesses could come in for impeachment but pursuant to the Rules of Evidence. But there's some sort of tricky language in that new section, isn't there? Do you have it in front of you? I'm trying to find it again. The old one said, which anyone who has been adjudicated delinquent to be a witness. Yes. And then the new one says, a witness including the minor or defendant if he or she testifies. What does that sort of mean? The witness was already in the provision. Yes. Well, as I said, prior to 1982, that wasn't the law and it was in conflict with Montgomery. In 1982, the Act was amended to come in – brought in line with Montgomery. But subsequent case law developed stating that a defendant's adjudication could come in in the case where he opened the door in his own testimony. However, the Act still said only a witness other than the defendant could come in – or only the adjudication for a witness other than the defendant come in. Thus, the Act was again out of sync with the current state of the Rules of Evidence. So as I understand your position, then you would argue that even though the defendant testifies, unless he testifies that he didn't have a prior criminal history or alludes or suggests that he has never been convicted of a crime in the past under any circumstances, unless he alludes to that, then the juvenile record can't come in. Is that basically your argument? That's my argument. That's the state of the Rules of Evidence and the statute – the plain language of the statute says that adjudications only come in pursuant to the Rules of Evidence. And that's how the Illinois courts had interpreted that language for over two decades. And in Harris, he did say, I don't commit any crimes. He did, yes.  There's a last paragraph in Harris, though, where they suggest that they're not going to interpret the current statute because the state never raised it. Well, the state did raise it. That doesn't really help us much, does it? No. I think it's worth noting that if the amendments did completely open the door to adjudications, then there's no reason to do any sort of opening the door analysis whatsoever. Further, the state cites no legislative history, no judicial decisions, or any authority at all to support its intention that the amendment change the law. Now, this is not a new amendment. This went into effect 10 years ago. How do you interpret the word defendant in that statutory change? What does it mean, defendant? Defendant could be a defendant in a criminal trial. Well, isn't that what this case is? A defendant in a criminal trial. Yes, it is. All right. So why doesn't this statute, then, allow for the introduction of a juvenile adjudication? Because it uses the word defendant. Well, Your Honor, the legislation kept in the language pursuant to the rules of evidence in a criminal trial. That language has long been held to rule or to state that admissibility under this statute is still governed by the rules of evidence in a trial. No, I'm understanding that, but what I'm not understanding is that word they stuck in there that we can't ignore. What does it – give me some other interpretation for that. Well, I don't think there needs to be another interpretation. Prior to the amendment – Excuse me, sir. There's a wonderful anecdote involving this sort of thing, but we won't go into it. You keep going. Don't worry about it. Prior to the amendment – I don't bring phones into court. Okay. I never have before, either. I don't know how I forgot. No one's ever called me. All right. We're sorry for this little interruption here. Yeah, Mr. Carroll, I'm sorry. Go ahead. Keep going. Prior to the 1999 amendment, the statute said just the adjudication of a witness could come in. Now, courts have interpreted witness to not include the defendant. However, the case law, such as Bunch, 1987 case, stated that while the general rule is that a defendant's adjudication can come in, it does come in when they open the door. However, the language of the statute at that point didn't let that – didn't allow for that. So the reason – In the case of juvenile adjudication. Yes, in the case of juvenile adjudication. So what this – the amendment did in adding the defendant was just to bring this – just to harmonize the act with the current state of the rules of evidence. And it's saying, you know, this is not a new amendment. It's been in the books for 10 years. You'd think that someone at some point in the last decade would have made note that this was a substantial change to the rules of evidence. And there isn't much other than Harris, is there? Well, Harris got a couple of appellate cases, but they all seem to go along with you, don't they? Yes. And Harris, again, the Supreme Court said – We're not going to touch it because the state didn't raise it. Yes. So – Did this change come into play at the same time there was that sort of overhaul of the Juvenile Court Act? So this was – yes, this was part of the main, like, major rewriting of the act. So it could be a – there could be a suggestion there, could it not? With the change in that sort of philosophy that was being introduced into the act, that this was also a change. Well, Your Honor, if they intended for the language, like, again, going back to the language pursuant to the rules of evidence, that had an understood meaning at that point. If they wanted to change how that was interpreted, they would have changed the language. They didn't. And for making the claim that the amendment was in response to, say, Massey and Kearns, well, Massey was, what, 15 years before the amendment was put in place? So to say that this amendment was, you know, a call to action against Massey seems a bit of a stretch. Could it be used – could we interpret it only for proceedings under the Juvenile Court Act, as opposed to, here we have a defendant who's in a criminal case, not a juvenile proceeding, and is testifying. However, he has an adjudication as a minor. Could this be limited to, perhaps, juvenile adjudication hearings, since it's part of the Juvenile Court Act? Well, that's not how it's staged, you know, in proceedings under this act or in criminal proceedings. Okay, that's further language that's – So that's – Okay, all right. I was just looking at page 25, and I – Yeah. Okay, so it couldn't be that interpretation. So – What about having it go to the jury? You know, the other convictions never went to the jury, but this one, you argue, was highlighted. Yes, I – I mean, the admission of it at all, itself, is highly prejudicial, and the judge compounded the prejudicial effect by giving it – or sending it back to the jury without also giving the convictions of the other state's witnesses. Illinois courts have recognized that, you know, sending back evidence to the jury highlights it at the expense of other evidence. Now, I think what should have happened in this case is what happened in People v. Franklin. In that case, our Supreme Court stated that the trial court properly denied a jury request to see transcripts of, you know, particular parts of testimony because granting such a request would have unduly highlighted that testimony at the expense of other – the other evidence. And so what the trial court in this case could have done is either completely deny the jury's request or give in, you know, the adjudications and convictions of all state's witnesses. In that case, it would have been a level playing field, but that's not what happened. And second, there's no – there was no proper reason for sending back adjudication. The jury was already aware of it, so the fact that they wanted to actually inspect the actual document strongly suggests that they're looking for propensity evidence. If you win on the first point, this is really the second argument's moot, isn't it? If we win on the first point, yes. However, I think if we lose on the first point, I still think this – the way it was treated by the trial court was in itself prejudicial enough to require a new trial. Okay. You want to sum up? Well, just saying that if we're going to let the question of whether defendants effectively spent the rest of his life in jail rest on the jury's determination of credibility, we better make sure that that determination is based on a fair representation of the evidence. If it's not done in this case, or Mr. Rodriguez was denied a fair trial, I respectfully ask this Court to – So do you preclude completely the possibility that that amendment to the statute simply placed juvenile convictions in the same category as adult adjudications? Yes. You reject that as a possibility under the statute? Yes, under the statute as the language of the statute has historically been. There's no legislative history that either of you cite to that would indicate to us that would give us some insight into why they amended it? That's correct. And if the legislature intended to make such a substantial departure from the longstanding rules of the evidence, one would think that someone would set them. I think we understand your position, Mr. Carroll. Thank you very much. Would we give you an opportunity to respond to the State? Thank you. Ms. Galetti. Good morning. Regarding the first issue, clearly under the plain statutory language, under this amendment which specifically added the language, including the minor or defendant, if he or she testifies, the legislature intended to allow somebody with a prior juvenile adjudication to be impeached with that for purposes of impeaching their credibility. What about his argument, which seems to be equally plausible? It says according to the rules of evidence, the rules of evidence under the Montgomery test, if you fold the Montgomery case into the statute and try to read them so that there is no conflict. Well, go ahead. Isn't that what we're supposed to do? We're supposed to try to absolve Montgomery from being in conflict with this statute if we can. And Montgomery is not to the extent, you know, there's no Illinois Supreme Court rule that I'm aware of that says that Montgomery is not subject to alteration by the legislature. It's been a pretty durable case, though, over the years, hasn't it? Yes, but the legislature in this case specifically added this language, which made a radical change in the language. And as you see in this case, the court did not abandon the Montgomery rule. This statutory amendment. Well, that's what I'm saying. They didn't abandon it, and you have to read this amendment in light of the restrictions that Montgomery placed on juvenile convictions. But this legislative language alters Montgomery to that extent. It doesn't alter the fact that you can't just in every case say, Oh, you have a prior juvenile adjudication. I'm going to let it in for what it's worth. The court still engaged and did in this case in the balancing test under Montgomery. But did they go further and make that analysis that Harris seems to require? That is, if he testifies, that's not enough. He also has to testify and implicate his prior criminal history in some way by suggesting that either he doesn't have one, or if he doesn't say that, he at least says I'm a good guy who's never been convicted of anything. Respectfully, Your Honor, I think when you read Harris, Harris did not reach the argument that we have in this case. Harris does not stand, though, for the proposition that the defendant has to, you know, so-called open the door to letting the stand. What does he stand for? Harris, in that case, Harris did not reach this analysis because it didn't need to. No, but it said that it was not error for the court to allow the introduction of the adjudication because in that case the defendant suggested that he was pure. I don't commit crimes is the exact word. But Harris didn't say that in every case that in order to let in a prior juvenile adjudication. Well, they also dodged whether or not this amendment has any impact at all on the Harris case or any other case for that matter. They said since we've decided the issue based on, you know, the evidence in this case under the old rule, I don't commit crimes is enough for the state to then argue that we can impeach him with a prior conviction. But Harris, I don't think, stands for the proposition that in every case you have to have a defendant who opens the door before this can be admissible. I think the statute is clear. If the defendant, if he or she testifies and they have a prior juvenile adjudication, then it hops up to the next step. The court engages in the balancing test. What's your best case for the advancement of the analysis that you're tendering to us? I think that People v. Bradley, Illinois Appellate Court case, it says it's presumed that a statutory amendment is made for some purpose and effect must be given to the amendment in a manner consistent with that purpose. I think the plain language in this case, I don't think that any other interpretation of it would be fair and that the legislature would not have gone to length to amend, specifically amend this language, if there wasn't an intention that in the appropriate case, not in every case, but in the appropriate case, a prior juvenile adjudication can be used to impeach a defendant if he or she testifies. And you were unable to find any legislative history? Correct. Sometimes it's a little hard to find it, I suppose. If I can move on to the second issue. Sure, but we've agreed that if you don't prevail on the first issue, there's no point in addressing the second issue. Correct, but I have every confidence that I will prevail on the first issue. Okay. It's when I think that the statutory language clearly allows it. Didn't this sending it back to the jury, I mean, I don't recall too many judges sending back convictions for the jurors to be looking at, do you? Kind of an unusual procedure, wasn't it? I have seen it done before. I can't say. I would just be speculating at this point how many times I've seen that. But in this case, again, the trial court obviously has discretionary power in these matters. But since there wasn't a request for the other convictions, didn't the judge then emphasize this conviction? No, I don't think so, because the jury requested only that conviction to look at. The jury was instructed that they were to view the defendant's testimony in the same way as they did any other witness, the purpose for which any prior convictions or adjudications had been introduced. So did they really have what they needed to know with the instructions? I think, though, in this case, the court, in the interest of making sure that the jury wasn't in any way confused, perhaps by the difference between the words, conviction, all the other witnesses it was presented, you know, you have a prior conviction. This was adjudication. Maybe the difference in the word. They wanted to see what that looked like. And all this paper said was adjudicated delinquent, B of UW. That was it. Everything else, you know, per counsel, defense counsel's request. None of the glory details were included. Right. Defense counsel objected, but he did then say, if you are going to send it back, I would ask that you only send back the fact of the conviction. That was sent back. Counsel didn't request, well, judge, since you're sending this back, why don't you send back all the other witnesses' convictions as well. There was no request made in that regard also. And I think when you look at this, in light of the evidence that was introduced, in light of the fact that it was just the fact of the adjudication, that this could not have affected the verdict in this case. In light of the evidence, that's your phrase you just used, do you think we could, would this be subject to a harmless error analysis if we found that the trial judge did err in allowing the jury to hear about this prior conviction? Absolutely, Your Honor. Oh, absolutely? Yes. Even though there was conflicting testimony at trial about who shot who and when? Yes. So you don't believe the evidence was closely balanced? No. And I think that when you have, you know, the eyewitness identification of a single witness is sufficient to prove guilty under this modality. Yes. That being sufficient is not overwhelming. But I think also, in addition to the eyewitnesses, you have an important factor here, which was the gunshot residue found on the defendant's hand. An expert testified that that can be consistent with three things, not just handling a gun, being in the vicinity of a gun, and what's the third? I don't recall, but it's the standard operating testimony that gunshot residue doesn't necessarily mean he actually fired the gun. But in this case, I think, you know, a rational jury properly found that the defendant was guilty. And nobody else, they didn't test anybody else. They didn't do any gunshot residue tests on any of the other individuals that were there, and there was quite a crew. And the person that was also identified, Garcia, didn't one of the witnesses say or more than one say it was Garcia who shot the gun? The defendant, his father, and his father's friend claimed that it was Garcia after the fact. They didn't tell the police that, you know, within minutes and hours after the shooting. But getting back to the second issue, this mere, you know, the giving of the fact of what the jury had already heard, the defendant was adjudicated delinquent of UUW, and the fact that the jury was instructed as to the purpose for which they were to use that information, that previous adjudication, that that did not affect the outcome in this case. To the rest of our brief, we would stand on our brief and ask that you affirm the defendant's conviction. Thank you. Thank you, counsel. Mr. Carroll, final word? Well, first, for a state's contention that the trial court case conducted properly for the admission of the adjudication, the judge stated that she was letting in the adjudication because the state's witnesses were impeached with their prior conviction, so it wouldn't be fair for the defendant not to get it. So that's not really a Montgomery's balancing test. Secondly, counsel mentioned amendments should be given effect. Well, our Supreme Court in Agnew stated when the legislature keeps traditionally interpreted language the same in an amendment, then that language should be given the same meaning it was before the amendment. Thus, the language stated that adjudication were permissible only for cylindrical evidence should be given the exact same interpretation as it was before the amendment. Well, couldn't it be the Montgomery 10-year felony prejudicial versus appropriate? Couldn't that be what they meant? Defendant, and then only for purposes of impeachment and pursuant to the rules of evidence in criminal trials. Well, Your Honor, I mean, this word defendant is troubling for your interpretation. Your Honor, no, it's not troubling for my interpretation. All the statement, all the word defendant does is bring the act into harmony with the current state of the evidentiary rules and rules of evidence state that a defendant's adjudication can come in if he opens the door. The prior version of the statute stated that only a witness's adjudication can come in. So all the amendment did by adding the word defendant was to bring the act into compliance with the rules of evidence. Secondly, if the legislature wanted pursuant to the rules of evidence to not really mean pursuant to the rules of evidence but pursuant to the rules of evidence except X, Y, or Z or pursuant to only these particular rules of evidence, they would have said so. They didn't. Finally, the fact that the document of the adjudication that was sent back to the jury didn't give the jury any new evidence that they didn't have before is not controlling. And like Gabriel said, the jury was given the same evidence they heard at trial. It was just not a complete text. So the fact that the adjudication didn't add anything is not... Just one last question. Under the language and the Rule 609, evidence of juvenile adjudication is generally not admissible. We all agree on that. The judge may, however, allow evidence of a juvenile adjudication other than the accused. So that specifically always ruled out the juvenile defendant. I mean the defendant who has an adjudication. Yeah, in Montgomery? Yes. Correct. Always ruled it out. Yes. Unless the person was a witness, and then the judge could look at it and weigh it. Yeah, correct. All right. So unless you have any other questions, I will stand on my brief. Thank you both. The case was well briefed and well argued, and it will be taken under advisement.